Good morning, everyone. The first case is United States v. Marzarella. Mr. Patton. Good morning, Your Honors, and may it please the Court. Judge Shirk, if I could reserve three minutes for rebuttal, please. Yes, of course. Before we start, I would just like to say that Judge Chigaris and I are delighted to have sitting with us this week Judge Rodriguez, one of the truly distinguished trial judges in the United States. Thank you very much. Good. Your Honors, as applied to the facts of this case, Title 18 of the United States Code, Section 922K, violates Mr. Marzarella's Second Amendment right to keep and bear arms. The conduct at issue is the possession of a handgun in Mr. Marzarella's home. Mr. Marzarella was not a felon at the time he possessed the weapon. He'd never been found to be insane or ever mentally committed, so he was not a person who was prohibited from possessing firearms. The firearm that he possessed, a .25 caliber handgun, is a small arms of the type that is covered by the Second Amendment. Good. So I guess the first question that we have is, is this protected or unprotected? That is, does it fall within that class of circumstances that the Supreme Court and Heller said is protected by the Second Amendment, or is it outside? And then obviously we have different levels of review on all of that. Why isn't this like the shotgun that was mentioned in Heller? Tell us why it differs in your view. Sure, Your Honor. The shotgun exemption actually grew out of the Miller case, where the National Firearms Act had been challenged. And in Heller, the way Heller explained Miller was that in that case, the defendants had not proven that a sawed-off shotgun was the type of arm, the type of firearm, that at the time the Second Amendment was adopted, citizens would possess to bring with them to malicious service. I understand your argument, but I mean, taken to its logical, perhaps ridiculous, extreme, I mean, they didn't have bazookas back then, atomic bombs. Is that all? I mean, any, let's say it's firearms, bazookas, or semi-automatic machine guns. Because they weren't available at the time of the adoption, none of that could be covered? Well, Your Honor, actually the Heller opinion deals specifically with that hypothetical. And they make clear that they're not saying that any weapon that could be used for military purposes is covered by the Second Amendment. The way they limited the scope of the Second Amendment was to looking at what type of arms a citizen would be expected to possess and to bear, bring with them to malicious service. And the Court said that the type of arms that a citizen would be expected to bring to malicious service is the typical small arms, handguns or a rifle, but certainly not a fully automatic machine gun. You know, I would think, obviously at the time the Second Amendment was ratified, they didn't have machine guns or bazookas, but I would, the way I would categorize it, they would say at the time the Second Amendment was ratified, a private citizen couldn't have a cannon. But they could have small arms and were expected to have small arms that they could bring with them to malicious service. And so that's the, that is the limitation. But shotguns, they had shotguns back in those days? Actually, I don't think they had shotguns, Your Honor. I think they just had smoothbore black powder muskets. But there's no doubt that a shotgun could, it could be used for military purposes and it is used for military purposes. But the point that the Supreme Court made in Heller referring to Miller, because they had Miller that was there that they had to talk about, was that it was not proven in Miller, the Supreme Court found in Miller, that that was a type of weapon that would have been useful for the military. And the court in Miller said they did not feel that they were in a position that they could take judicial notice of the fact that it is a type of weapon that could be used for the military. Here we're talking about a handgun, the most typical form of small arms that there is. And that in the Heller opinion, they were dealing with firearms. And the majority in Heller clearly found that small arms like handguns were exactly the type of firearms that were expected to be possessed by citizens and that they were expected to bring with them for malicious service. So I don't think that there can really be any question here that this is a firearm that falls within the scope of the Second Amendment. And indeed, the government admits as much in their brief. Can't the government dictate where and when a person can carry that weapon? Absolutely. They can dictate when and where the person carries it, but not if they can possess it in their home. And I think that's a crucial distinction, the distinction between... And if you look at the statement in Heller about how the Second Amendment's not absolute and that their ruling shouldn't be taken to mean that all gun regulations would be found to be unconstitutional. One of the examples they gave was carrying a firearm in sensitive places, such as schools and public buildings. I think there's a meaningful difference between trying to criminalize the possession of the firearm in the person's home, which the Supreme Court in Heller said is the core protection of the Second Amendment. Now, if you start carrying that firearm outside of the home, then you're getting away from the core protection. And the farther you're getting away from the core protection, the more the government has the right to place limits on your rights. I believe, and that was the point the Seventh Circuit was making, and I don't know if I pronounced the name right, the Scone case. I don't know how to pronounce it either. But that was the point they were making there, that you were talking about a rifle that was in his truck that he was possessing for hunting purposes. And the Seventh Circuit said, we don't have any trouble finding that that conduct is protected by the Second Amendment, but it's a couple steps removed from the core protection of possessing it in the home. And therefore, that's why in that case, the Seventh Circuit found that intermediate scrutiny would be available. Do you think the government has a legitimate right to regulate through the requirements of appropriate registration? If the government were to enact a comprehensive regulation framework, I believe that that could pass even strict scrutiny. But because if they were requiring registration of guns possessed in a person's home so that you're covering core activity, then it has to be narrowly tailored to promote that compelling government interest. But to do that, they would actually have to establish a real registration requirement. And that's not what the law does currently. In fact, the law prevents the government from using the serial numbers to create a registry. All the serial number allows the government to do at this point is to find out who the first retail purchaser of the firearm is. That's it. That's all they can find out. And the reason that's all they can find out is because once you have that sale, that first retail sale, which the government clearly can regulate because it's a commercial sale of a firearm. But once you have that, there's no registration requirement. There's no requirement to fill out any paperwork if you sell that firearm to somebody else. But does that mean that you're conceding it has some legitimate law enforcement use, then, at least in being able to identify the first purchaser? And if it has some legitimate purpose and not perhaps, as you say, to the extent that you've indicated, why isn't that sufficient? We'll get to the standard in a few moments. Well, but I think the standard plays a part in answering that question, Your Honor, because the standard makes a big difference. Because I don't dispute that the government can require manufacturers to place serial numbers on firearms and require federally licensed firearm dealers to record, based on the serial number, the sale to the first retail purchaser. Now, it is of very limited use, practically speaking. In this case, the firearms trace showed that the gun had been sold in Bethlehem, Pennsylvania in 1972. It showed who the first retail purchaser was. And then it was 12,476 days until the firearm was purchased by the undercover officer from Mr. Marzarella. Can I switch your – because you have very little time left, I see. Obviously, we have to figure out what type of scrutiny we give this. We know what your position and the government's position is. Let me ask you. I mean, the Seventh Circuit used an intermediate scrutiny. If we were to use that level of scrutiny, does this pass? Absolutely not. Okay. Can you tell us why? Yes. Number one, intermediate scrutiny starts with the presumption that the statute is unconstitutional. That's a very meaningful starting position. And then the government has to establish that the goal is in proportion in the burden that the law places on the right is in proportion with their goal. And here you still can't get that because the government won't pass the laws to do what they say it is they want to do. They say they want to be able to trace the handguns through the serial number. But they are unwilling to pass the laws that would actually allow them to do it. When you think about it, we do it with cars every day through VIN numbers. And when people, even private citizens, sell a car to another private citizen, you have to go, you have to fill out the paperwork, it has to get turned into the state so you can actually track the car. So it can be done with firearms. But the government – and I've said their government won't do it because the people don't want it done. Their elected representatives won't do it. Is the fact that maybe the government doesn't have a foolproof system here, does it make it any less of an important government objective for purposes of this intermediate scrutiny? Well, first of all, I think you have to be careful with putting too much weight on the government, saying that the government's need to enforce the laws is enough of a compelling interest. Because obviously that's a compelling interest. But if you take that too far, then you can use that to invalidate any constitutional right. Yeah, but do you have to severely burden the right using the intermediate standard if, in fact, it doesn't even restrict the ability to have a legal weapon in your home, which seems to be the core of the Heller case? Well, Your Honor, it is a burden, and I would submit more than a negligible burden. And it goes back to saying that the scope of the Second Amendment is supposed to be the scope at the time that it was ratified because it was simply protecting a common law right that already existed. I see my time is up, Your Honor. Please finish. And so you start off with this. If we were back at the time the Second Amendment was ratified, this gun would be no problem with possessing this gun because the guns didn't even have serial numbers. And the statute at issue here wasn't passed until 199 years after the Second Amendment was ratified. And if you allow the government, if you do your interest balancing by first letting the government say, we don't like these kinds of guns and, therefore, because we say so, only criminals possess them. Therefore, this is no real burden because only criminals are going to possess them. Well, they get to rig the game. They always win that balancing test because they get to say what guns are okay and what guns are not okay. And the whole point of the Second Amendment was to restrict the government's ability to do that. We'll have you back on rebuttal. Thank you, Mr. Penn. Thank you. Ms. Irwin. May it please the Court. Laura Irwin from the U.S. Attorney's Office on behalf of the government. It's the government's position in this case that the district court correctly held that 922K is constitutional. The district court looked at it in terms of being presumptively constitutional within that subset of rights or statutes that the Supreme Court discussed in Heller, and the district court also looked at this under intermediate scrutiny and held that under both analyses, the burden was so minimal, so incidental to the right identified in Heller, that the statute was constitutional. Why isn't it a court protection here? It's not a court protection, Your Honor, because several reasons. One, there's not a broad class of individuals like there was in Heller that are prevented from owning and possessing a firearm. Heller prevented all responsible law-abiding citizens from possessing or owning a firearm for purposes such as self-defense in the home. 922K simply says it's illegal to possess a firearm knowing that it bears an obliterated, removed, or altered serial number. It doesn't speak to a class of individuals. Second, 922K does not bar an entire group or entire characteristic or type of weapon, as was the case in Heller. That prevented any law-abiding citizen from owning a handgun within the home for purposes of self-protection, and that's just not there. Likewise, the only burden which is minimal in 922K is that it must bear a serial number that is not altered, obliterated, or removed, and that's very minimal because it doesn't change. You asked Mr. Patton about the character of the weapon, the type of weapon. To the government, it's irrelevant whether or not, at the time the Second Amendment was passed, whether or not firearms were a serial number because it was still a handgun. A handgun is a handgun. It does not change the user's ability to defend themselves. That's the core right identified in Heller. It's also the government's position that, in this case, the court should look at this statute under the rational basis standard of review. Hold on a second before you get to that. It's undeniable that it is the weapon of choice to defend one in the home. Is that correct? According to the Supreme Court, yes, in Heller. Yes, and this is all about interpreting Heller. That's right. Figuring out what it says here. And I guess, according to Heller, this was the kind of gun that people would have taken to their militias at the time the amendment was adopted. You would agree with that as well? That's correct. Okay, so the only change, and also there were no serial numbers on guns back in those days. That's correct. All right. Your basic position is that it is not part of the core protection because it simply implicates a class of handguns or a type of handgun. The use of the handgun is still the same. Let me make clear what our position is on the type of handgun. When the Supreme Court spoke to the type of handgun, it was speaking in broader terms than what Mr. Patton would have you follow. It was speaking in terms of a handgun. A handgun is no different if it bears a serial number in terms of its performance and the way it's used if it does or doesn't bear a serial number. So our position is you look at the character of the firearm. I think that it's very dangerous, as Judge Chigars pointed out, to talk about specific features on a firearm in terms of whether or not that was around at the time the Second Amendment was passed and whether or not it's still going to be permitted today. I mean, if you look at just the technological changes of firearms, I think it's very dangerous if you don't look at it in terms of its overall character. Good. Does the shotgun analogy help you in this, the reference of the Supreme Court? To be perfectly honest, I hadn't really thought about it in those terms. I was focused more on the fact that it's a handgun that doesn't change at all by virtue of the placement of a serial number on it. All right. Good. You were about to talk about the level of scrutiny. Right. If we get beyond that. Any discussion of the level of scrutiny that's applicable to this type of statute obviously has to begin with footnote 27 of the Supreme Court's decision in Heller. And the government reads that footnote and its surrounding text to say that when there is a statute that under the pretense of regulating destroys a right, it cannot be evaluated under a rational basis level of review. And this statute, by comparison, is many steps removed from the statute examined by the Supreme Court in Heller. As I said, it doesn't bar a group of any sort of individuals from possessing or owning a firearm within the home. And it doesn't bar any type of firearm from being possessed or used in the home for self-defense. So for those reasons, we believe that rational basis is still available to review a statute such as 922K that imposes such a minimal burden on the right identified in Heller. And 922 simply, as I said, prevents possession of a firearm knowing that it bears an altered, obliterated, or removed serial number. And the rational basis test is met is not only for the reasons I mentioned about the scope and the nature of the weapon, but Congress found that firearms without serial numbers are untraceable. They're more flexible for use by a criminal because they can't be traced. And we believe that there's a rational basis. If any other courts, I guess, undertaking a review of any of the sections of 922 ever used rational basis test? No, Your Honor. Not that I found. And I think that could be the case because the only other case that I found that discusses 922K is Lewis. It's the Virgin Islands decision that's cited in our brief. It's really a very cryptic analysis. And I think the reason why we haven't seen rational basis in these other cases is because perhaps those statutes don't fall within the same type of category as 922K. They do provide, for example, felon of possession. That's a class of individuals that might require a little bit more scrutiny than a statute that is like 922K. It simply requires a serial number that doesn't affect the use or performance of a firearm. Could you apply the rational basis test here if we did? What would your position be? It would be that it doesn't bar an entire class from ownership. It doesn't bar a type of firearm. It doesn't affect the performance for self-defense. And the Congress had a good reason for passing 922K. That's pretty much set forth in our brief. I'd like to point out to the Court that, as Mr. Patton mentioned, this is an as-applied challenge to this statute. He keeps honing in on the fact that Mr. Marzarella possessed this firearm in his home. A couple points there. One is the statute doesn't make it relevant where it's possessed. It's irrelevant that he possessed it in the home. But Heller seems to think it's important. It does, Your Honor, and that's my second point. Mr. Marzarella would like the Court to remember that he possessed it in his home, but he deems irrelevant the fact of what he was using it for. He was using it for a commercial purpose. He was transferring it away. He sold it away to the undercover trooper. So under an as-applied analysis, the Court needs to look at all those facts. There's absolutely no evidence in this case that Mr. Marzarella possessed the firearm within his home for purposes of self-defense. So when Mr. Patton talks about within the home, that's a valid point, but it has to go one step further. The Supreme Court did not identify a blanket right to possess firearms within the home. They said firearms within the home for purposes such as self-defense. So I think it's important to remember those limitations on the as-applied analysis. What if we take Judge Gigaris' question to Mr. Patton? What if we were to decide that the Seventh Circuit had it right and apply a hybrid test? How would that apply? Are you talking about SCOIN? Yes. Assuming I'm pronouncing it correctly? Yes. I think the statute would also – I don't want to use the wrong words – reasonable fit. Those two tests are so close in their words. But there certainly is a reasonable fit between the government's interest in keeping track of firearms. And as indicated in our brief, there's complete disagreement between the parties as to the usefulness of firearms tracing. And to take up a point made by Judge Gigaris, just because the tracing system is not completely robust doesn't mean it's not useful. It doesn't mean there's not a reasonable fit. The tracing program achieves its goal of taking the firearm back to its original retail purchase. Beyond that, there's other tools that law enforcement uses that often lead to where that firearm went before it ended up with our defendant. It also can continue to provide information on a broader scale in terms of straw purchasing, trafficking, those types of things. It's multipurpose. It's not just getting to this individual defendant, which can be done with a combination of other techniques in addition to serial number tracing. Are you aware of other cases in the country where the government is proposing the rational basis test cases that may be in litigation? I personally am not aware of any. It's my understanding from the Department that the view is that any statute like 922K that is so minimal in its burden would be appropriate under a rational basis. So I realize that's an unsatisfactory answer. No, no, I understand. But I can assure you that the analysis that takes place at the Department about Heller and the standard of review is circumspect. It's detailed. It's multilayered. Putting the rational basis test out there is not something that's taken lightly. It's not a decision that can be made by an individual at USA. One final point I would like to make is that Heller talked about the rights of a law-abiding citizen, a responsible law-abiding citizen to possess or use a firearm within the home for purposes such as self-defense. Mr. Marzarella would like you to believe that those phrases, law-abiding, responsible, somehow equate to mean something having to do with a prohibited person. I'm not sure what the relationship is between those phrases because that wasn't before the Supreme Court in Heller, but I urge the Court to look askance at the notion that Mr. Marzarella is a responsible law-abiding person. At the age of 23, which is when this offense was committed, he had a criminal history score of 5, and that included a simple assault during which he tried to strangle a woman. He pushed her around and he bit her in the shoulder. So I don't know that Mr. Marzarella's efforts to make himself on all fours with the defendant, or the plaintiff, rather, in Heller makes sense. He's not law-abiding. He's not using this firearm in his home for protection of his hearth and home. If there are no further questions, I will take my seat. Any other questions? No, I have no more questions. Mr. Erwin, thank you very much. Thank you. Mr. Patton. I'm taking that last point first. The simple assault conviction occurred after Mr. Marzarella was before he was charged with possessing the gun, but it was after, chronologically, it was after he possessed the firearm. That's why he was not a prohibited person. And as far as the law-abiding citizen, the Heller court, in doing its historical analysis of trying to determine what the scope of the Second Amendment was, you know, focused on the fact that felons had been prohibited from possessing firearms, and therefore that's why the felons, they don't even come within the scope of the Second Amendment, because at the time that the amendment was ratified, the common law right to possess a firearm just didn't apply to felons. But they did make a sharp distinction between the felons and misdemeanors. And you will notice that Mr. Marzarella was not charged in any way with being a prohibited person in possession of the firearm. The sole charge was possessing the firearm. And that is important also to Ms. Irwin's comments about the as-applied challenge. It is an as-applied challenge, because I'm not saying that Section 922K would be unconstitutional in every possible situation. But the only conduct charged in this case was Mr. Marzarella's possession of that firearm. And the only evidence about his possession was his possession of the firearm in his home. And that's never been disputed by the government. Now, the fact that he ultimately sold the firearm to an undercover agent can't logically mean that he did not still have a core right to possess that firearm. If you accept that proposition, then someone can own a handgun, have it in their home for self-protection, but then decide someday that they want to sell it, advertise it in the paper, in the Erie paper, in the personals, there's guns for sale listed regularly. Under the government's version, as soon as those in the district courts, for that matter, the second that they put those guns, notice them for sale, somehow they lose their right to possess that firearm. If it's in the nature of a registration requirement and they disclose the ownership of the gun, there's a way of determining or perhaps legitimizing that weapon. But the question as to whether or not the regulation overburdens it, there is a discussion that perhaps this type of regulation is presumptively constitutional. If you follow the litany of permitted uses that Heller gives, and one of those happens to be registration, and the question then would be, if they permit registration, is this a legitimate form of registration that could be enforced by the government? Your Honor, I would respectfully disagree that gun registration was one of the ‑‑ I see my time's up, Your Honor, if I can. Please go ahead. The Heller court did not list firearm registration as one of the exceptions. They said that the commercial ‑‑ No, they permitted the registration to take place. Well, they said that the statutes that govern the commercial sale of firearms were presumptively lawful. But I think there has to be a reason why they put commercial sale of arms, because even currently under the Uniform Firearms Act, there's a sharp distinction drawn between commercial sales of firearms that have to be done through federally licensed firearm dealers and the private sale of firearms. Under current federal law, a private citizen can sell a firearm to another private citizen who is a resident of the same state without doing any paperwork whatsoever. There's no requirement that any paperwork be done so that the government can track that. And so I think there has to be a substantial difference between the commercial sale of arms and just the private sale of arms. Thank you very much, Mr. Patton. The case was very well briefed and very well argued. We'll take the case under advisement.